Harriet J. BARTOSCH, et al.,
Appellants,

v.

Kim D. LEWISON, et al., Respondents.

No. C1–87–337.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Renee L. Worke, Rietz, Rietz & Rietz, Owatonna, for appellants.

Lee L. La Bore, Lee L. La Bore & Associates, Ltd., Hopkins, for respondents.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Harriet and Arlen Bartosch sued Kim and William Lewison for injuries suffered by Mrs. Bartosch as a result of an automobile accident. The jury returned a special verdict finding negligence but awarded no damages. The Bartoschs moved for a new trial on the grounds of irregularities in the jury's special verdict, misconduct of Lewison's counsel, errors of law in the admission of collateral source evidence, and that the verdict of no damages was not supported by the evidence. The motion was denied and this appeal followed. We affirm.

## FACTS

At dusk on June 8, 1984, Kim Lewison, driving her father's car, approached Highway 14 on County Road # 6, stopped at the stop sign and then pulled onto the highway where she struck the Bartosch vehicle on the left front bumper. Harriet Bartosch was proceeding west on U.S. Highway 14, a through highway. Lewison claims she never saw the Bartosch vehicle until the impact. Bartosch, traveling on cruise control at 55 mph, without car lights, braked and moved to the right but was unable to avoid the accident.

Following the accident Harriet Bartosch was examined at St. Mary's Hospital in Rochester and released the same day with instructions to follow-up with her family physician, who prescribed a cervical collar, ultrasound treatments, Tylenol and Motrin, and rest. She was later referred to a neurologist who found no neurological damage and suggested that perhaps her problems were functional and related to family stress and she should consult a psychiatrist. Mrs. Bartosch continued treatment with her family physician until July 9, 1984, when he referred her to an orthopedic surgeon who treated Bartosch with two weeks of traction in the hospital, physical therapy and prescribed a TENS unit for pain treatment.

Bartosch admitted to low back pain prior to the accident and now claims injuries to

her neck which resulted in headaches and limited motion. There was evidence that Bartosch had been treated extensively for headaches in the past and that some of her neck problems were caused by degenerative arthritis which pre-existed the accident.

At the time of the accident, Harriet Bartosch was fifty-eight years old with a good employment record as a material handler at a warehouse. Her job required some heavy lifting. Mr. Bartosch was totally disabled as the result of heart disease, and has since died.

The jury returned a special verdict finding Bartosch negligent but her negligence not a direct cause of the accident. They found Lewison negligent and her negligence a direct cause of the accident. The jury awarded no damages. The jury did not answer question 7 of the special verdict.

## ISSUES

1. Did the trial court err in entering judgment based on the incomplete special verdict form returned by the jury?

2. Did the trial court err in admitting evidence of collateral sources of recovery available to appellant?

3. Did the jury's damage award result from passion or prejudice contributed to by misconduct of defense counsel.

## ANALYSIS

### I

The jurors received special verdict questions which they completed except for the following question:

QUESTION NO. 7 What amount of money, if any, will fairly and adequately compensate plaintiff, Harriet J. Bartosch, for future damages for:

 a. Loss of earning capacity:

 $ 0

 (1) Over what period of time will such loss of earning capacity occur?

 _____years

 b. Pain, disability, disfigurement, embarrassment and emotional distress:

 $_____

 (1) Over what period of time will such damages occur?

 _____years

The judge orally reviewed the special verdict with the jurors. He asked question 7 as follows:

What amount of money, if any, will fairly and adequately compensate Plaintiff, Harriet J. Bartosch, for future damages for loss of earning capacity? And your answer is zero dollars.

The jury was polled and indicted that this was the verdict. The jury was then dismissed. Bartosch later discovered the omitted answers on the special verdict form.

 Ordinarily, when a jury returns inconsistent or incomplete answers to a special verdict, it is preferable to send the jury back for further deliberation. *See Meinke v. Lewandowski*, 306 Minn. 406, 412, 237 N.W.2d 387, 391 (1975). However, the judge

has a responsibility to attempt, if at all possible, to harmonize inconsistent responses in a special verdict.

*Id.* The court may do this by exercising its own powers of interpretation. *Id.* at 412, 237 N.W.2d at 391–92. The trial court concluded that the jury intended to award nothing to the Bartoschs. That answer was consistent with the other answers to the special interrogatories. In addition, when the jury was polled the jury members had the opportunity to indicate they intended damages and they did not do so. The trial court correctly ordered judgment based on the special verdict rendered by the jury.

### II

 During trial, the Bartoschs moved in limine to exclude the introduction of evidence of their present income. This income was derived from interest income, real estate holdings, Social Security disability payments, PIP wage loss benefits and private loss of income insurance benefits and was greater than their income prior to

the accident. The Tort Reform Act prohibits the introduction of such evidence.

> The jury shall not be informed of the existence of collateral sources or any future benefits which may or may not be payable to the plaintiff.

Minn.Stat. § 548.36, subd. 5 (1986).

Lewison argued at trial that the Bartoschs "opened the door" to such evidence when Harriet Bartosch testified that her husband was severely disabled and dependent on her for support, thereby conveying the impression that they were in dire financial straits because Harriet was no longer able to work as a result of the accident. Lewison argues that evidence of present income was necessary to help show that Harriet Bartosch did not return to work because her income was now sufficient, her health, without the accident-related injury, was poor, and her husband's life expectancy was limited. Under these conditions, the collateral sources rule should not be used as a shield. The affirmative volunteering by Bartosch of financial destitution caused by the accident justified the trial court's opening the door for cross-examination for the narrow purpose of testing the credibility of Bartosch's assertion. *See Gladden v. P. Henderson & Co.*, 385 F.2d 480, 484 (3rd Cir.1967), *cert. denied*, 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968).

## III

 A new trial can be ordered when the damages awarded appear entirely inadequate. *Seydel v. Reuber*, 254 Minn. 168, 173, 94 N.W.2d 265, 269 (1959). However,

> the granting or refusal of a new trial upon the ground of inadequacy of damages appearing to have been given under the influence of passion or prejudice is largely within the discretion of the trial court and * * * the ruling of the trial court will not be disturbed on appeal unless there was a clear abuse of discretion.

*Id.* at 174, 94 N.W.2d at 270. The jury's verdict should not be changed "unless there is no evidence which reasonably supports the verdict or it is manifestly contrary to the evidence." *Smith v. Carriere*, 316 N.W.2d 574, 575 (Minn.1982). There is evidence on the record to support a finding that Harriet Bartosch did not suffer disabling injuries as a result of the accident. The jury could have believed that any disability was the result of prior physical problems coupled with stress.

 Appellant also alleges improper conduct on the part of defense counsel in implying to the jury that Kim Lewison, a college student, would be responsible for paying any damages. While counsel's comment should not have been made, it consisted of a single sentence in the middle of a lengthy closing argument and we do not believe it prejudiced appellant to the extent of requiring a new trial.

## DECISION

The trial court did not err in supplying omitted special verdict answers which were consistent with the answered question. Collateral source evidence on income was allowable because appellant opened the door to such evidence. The award of no damages is supported by the evidence and not the result of passion or prejudice.

Affirmed.